STATE of Missouri ex rel. Werner VON PEIN and Adrianna Von Pein, Relators,

v.

The Honorable Donald B. CLARK, Judge of the Sixteenth Judicial Circuit of Jackson County, Missouri, at Kansas City, Division Seven, Respondent.

No. KCD 27249.

Missouri Court of Appeals, Kansas City District.

Aug. 4, 1975.

Bradley McTavish, Kansas City, for relators.

Royce J. Estes, Kansas City, for respondent; Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, of counsel.

Before PRITCHARD, C. J., and SHANGLER, DIXON, SWOFFORD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ.

PRITCHARD, Chief Judge.

The question is whether respondent Circuit Judge exceeded his jurisdiction in entering an order that relators, now residents of Belgium, appear for the taking of their depositions "at the offices of Linde, Thomson, Fairchild and Langworthy, Floor 3, Columbia Union National Bank Building, 900 Walnut, Kansas City, Jackson County, Missouri, at a time and on a date not less than 10 nor more than 15 days prior to the date on which this case may hereafter be specially set for trial, the time and date to be selected by counsel for plaintiff and notice thereof shall be given defendants not less than 30 days prior to the date so selected."

The underlying action in which relators' deposition are sought is for damages allegedly occasioned by a dog bite of "one Doberman pinscher" and that "the defendants wrongfully kept said dog in that said defendants knew or should have known that said dog was of a ferocious and vicious disposition, and likely to and accustomed to

attack and bite mankind," and that the dog was permitted to go at large without being properly guarded, restrained or confined. Certain ordinances of the City of Kansas City (§§ 6.50, 6.52 and 6.54), relating to the keeping, confining, permitting on public streets of dogs of cross, dangerous or ferocious disposition; prohibiting those dogs which habitually jump upon or threaten persons on the public streets; and prohibiting dogs from running at large without leashes. Under Count I of the first amended petition damages were prayed for in the amount of $25,000.00, and under Count II, under an allegation that relators' acts "were intentional and reckless so as to be in utter disregard of the safety and consequences to others," an additional judgment for $25,000.00 as punitive damages was demanded by plaintiff (Martha Belle Smith).

Relators were served with a summons and a copy of the petition for damages on July 11, 1973. An answer was filed, and on August 14, 1973, relators were served with plaintiff's interrogatories, 51 in number. Separate answers (noted below) were filed by relators to the interrogatories. On September 17, 1973, relators' attorney was served with notice to take their depositions in Jackson County, Missouri, on December 5, 1973. By letter on October 11, 1973, relators' attorney notified plaintiff's attorney that relators then resided in Brussels, Belgium, and "Accordingly, I will not be able to have them present on December 5, 1973, for you to take their deposition. Considering their present location, the expense of a special trip for this purpose would be prohibitive." On October 17, 1973, plaintiff filed a motion for a default judgment against relators based upon their wilful failure to appear before the officer who was to take their depositions. Relators filed a motion for a protective order that plaintiff's notice to take depositions be quashed; plaintiff's motion for judgment by default be denied; and that plaintiff be directed to proceed with her discovery so as not to violate the intent of Rule 57.01, wherein it provides that the court may make any other order which justice requires to protect the party or witness from undue expense of oppression. Both motions were finally overruled, but the court entered the above order which is the basis of relators' petition for a writ of prohibition. The preliminary rule in prohibition issued and the matter has been fully briefed, argued and submitted to this court.

There was some equivocation in oral argument by counsel for relators with respect to whether they would in fact be in attendance personally at the trial. It was stated by counsel that in the trial court's order it was presumed that there would be attendance by relators at the trial; that it has never been indicated whether or not they would attend trial, "and that is not particularly relevant"; that if relators were ordered to appear, "It then becomes my burden and my responsibility to produce those people for deposition in compliance with the court's order"; and "If [relators] appear by counsel a defense could be presented on their behalf by me." "A party to a civil action who is not in default, is entitled to be present in the courtroom, and to be represented by counsel at all stages during the actual trial of the action. This does not mean, however, that it is essential to the jurisdiction of the court that the parties be present at all times during the trial, but simply that this right cannot be denied them. They must be given the opportunity to be present, but if that opportunity is given, their absence during the trial does not affect the right to proceed." 75 Am. Jur.2d Trial, § 51, p. 164. The trial court's order here does specify that 30 days notice to relators be given to relators of the date of trial as selected for trial. It does, however, assume that relators will be present at the trial, and orders them to appear for their depositions within 10 to 15 days of the date of trial for the taking of their depositions. Under all of the circumstances here, the order is too broad.

Without question, the right of a party to depose witnesses and as such ad-

verse parties is an absolute one. *Norkunas v. Norkunas,* 480 S.W.2d 92, 94[7][8] (Mo. App.1972), and cases cited. Norkunas involved the quashing of defendant's subpoenas, held to limit substantially the range of his defense. But the "absolute right" to take depositions must be equitably measured with the adverse consequences and hardships upon the party sought to be deposed as the facts may show. Here the fact of relators' far distant residence from the place where they were ordered to appear for the taking of their depositions is a most significant one. Although, as the trial court observed, relators cannot subvert the right of plaintiff, Smith, to take their depositions, by the removal of their residence from the place where personal service was obtained upon them, the plaintiff must abide by the provisions for discovery available to her which would obviate undue hardships upon relators.

One of the provisions for discovery is the use of written interrogatories under Rule 57.01, V.A.M.R., here actually used by plaintiff Smith. It cannot be known exactly in which posture facts, under appropriate instructions, may be submitted to the trier of the fact, yet it appears that plaintiff has elicited information bearing on the submissibility of her case of liability in this dog bite action by reason of relators' admissions in answers to propounded interrogatories concerning their knowledge of the vicious or dangerous propensity of their Doberman pinscher: To interrogatory No. 36, "To the best of your knowledge and belief, has the *dog* referred to in Interrogatory No. 21 ever bitten anyone prior to June 21, 1973?" Relator Mr. Von Pein answered: "Yes. I was told by my wife that she had nipped the mailman", and that his wife said there was a police report made with respect to the biting. To interrogatory No. 40, "To the best of your knowledge and belief, has the dog referred to in interrogatory No. 21 ever growled, snarled, snapped or in any manner displayed anger toward any person prior to June 21, 1973?" Mr. Von Pein answered, "No. The dog does not snarl or growl.

There are several people who can attest to the docile nature of the dog. The only situation under which she might nip is if she were startled." In answers to interrogatories 36 and 37, relator, Mrs. Von Pein, stated the dog had nipped the mailman in the Spring of 1973, that she saw it, that there were no [other] witnesses to the biting, that the dog "was startled near me and mailman approached me", that she did not recall the name of the police officer who investigated the biting, and "Bite was very minor and only barely broke the skin."

■ If plaintiff Smith is dissatisfied with the status of her case concerning its submissibility within cases such as *Boosman v. Moudy,* 488 S.W.2d 917, 920[1, 2] (Mo.App. 1972); *Maxwell v. Fraze,* 344 S.W.2d 262, 264[2] (Mo.App.1961); and *Dansker v. Gelb,* 352 S.W.2d 12, 16[5] (Mo.1961), she may have further discovery under Rule 57.04 (Deposition upon written questions), and Rule 57.05(c) (Deposition pursuant to a letter rogatory), and further interrogatories. This procedure should obviate the expenditure of time and expense either for plaintiff Smith to travel to Belgium to take relators oral depositions, or for relators to travel to Kansas City, Missouri, to submit to depositions.

There are several cases which have given protection to persons sought to be deposed where there existed undue expense, hardship, and oppression in requiring them to travel long distances for a personal appearance before an officer empowered to take their oral depositions. See *Perry v. Edwards,* 16 F.R.D. 131 (D.C.W.D.Mo.1954); *Stevens v. Minder Construction Corporation,* 3 F.R.D. 498 (D.C.S.D.N.Y.1943); *Gitto v. "Italia," Societa' Anonima, Etc.,* 28 F.Supp. 309 (D.C.E.D.N.Y.1939); *Clair v. Philadelphia Storage Battery Co.,* 27 F.Supp. 777 (D.C.E.D.Pa.1939); *Butts v. Southern Pacific Co.,* 7 F.R.D. 194 (D.C.S.D. N.Y.1947); *Layton v. Lee,* 196 A.2d 578 (Del.Sup.1963); *Kaufman v. Kaufman,* 63 So.2d 196 (Fla. banc 1953); and *Bolognino v. Anheuser-Busch, Inc.,* 279 App.Div. 819,

109 N.Y.S.2d 111 (Sup.Ct.1952). These cases speak of the alternative procedures for discovery such as are encompassed in Rule 57, supra.

█ Under the facts of this case, showing undue hardship upon relators to travel from Belgium to Kansas City, Missouri, to give their depositions, the trial court abused its discretion in entering its order in the manner done. For that reason the preliminary rule in prohibition is made absolute. However, if relators do in fact plan to be present in person at the trial, the trial court may require them to arrive in Kansas City a sufficient time in advance of the date the case is set for trial to allow for the taking of their oral depositions if plaintiff Smith so desires. Upon their failure to so appear, the trial court may impose such sanctions as may be appropriate under Rule 61.01(f) and (d).

All concur.